# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AJAY NAIDU RAVULAPALLI, *et al.*,

    Plaintiffs,

    v.

JANET NAPOLITANO, Secretary, U.S.
Department of Homeland Security, *et al.*,

    Defendants.

Civil Action No. 10–447 (CKK)

## MEMORANDUM OPINION
(March 29, 2011)

Plaintiffs Ajay Naidu Ravulapalli and Lakshmi Alekhya Ravulapalli (collectively, "Plaintiffs") bring this action against Defendants Janet Napolitano, Secretary of the Department of Homeland Security, Alejandro Mayorkas, Director of U.S. Citizenship and Immigration Services ("USCIS"), and David L. Roark, Director of the USCIS Texas Service Center, in their official capacities (collectively, "Defendants"). Plaintiffs contend that Defendants unlawfully denied their applications to adjust their immigration status in violation of federal law and preexisting USCIS policy. Plaintiffs assert causes of action under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), the Mandamus Act, 28 U.S.C. § 1361, and the Fifth Amendment to the U.S. Constitution. Presently pending before the Court is Defendants' [8] Motion to Dismiss or, in the Alternative, to Transfer. For the reasons explained below, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' motion to dismiss and DENY Defendants' alternative motion to transfer.

# I.  BACKGROUND

*A.        Statutory and Regulatory Background*

The Immigration and Nationality Act, codified in Title 8 of the U.S. Code and its

accompanying regulations, sets out a three-step process by which an alien living in the United

States may become a permanent resident based on an employment opportunity.  First, the

employer seeking to hire the alien must apply to the Department of Labor for certification that

the issuance of an employment-based visa and admission of the alien worker to the United States

will not have an adverse effect on the American work force.  *See* 8 U.S.C. § 1182(a)(5)(A)(i).  If

the Department of Labor grants this certification, the employer may then file a petition to have

the alien worker classified according to one of several preference categories, such as aliens who

are members of professions holding advanced degrees whose skills will benefit the economy.

*See id.* § 1153(b) & 1154(a)(1)(F).  The employer files this petition by submitting a Form I-140

Immigrant Petition for Alien Worker ("Form I-140" or "I-140 petition"), to USCIS.  *See* 8 C.F.R.

§ 204.5.  The alien is considered the "beneficiary" of the I-140 petition.

The third step is for the employee beneficiary to file an application to adjust his or her

status to become a lawful permanent resident.  *See* 8 U.S.C. § 1255.  This application is filed on

a Form I-485, Application to Register Permanent Residence or Adjust Status ("Form I-485" or

"I-485 application").  An approved I-140 petition is a prerequisite to the approval of an I-485

application.  *See* 8 U.S.C. § 1255(a).  The spouse of an employee beneficiary may also file an I-

485 application based on the marital relationship.  8 U.S.C. § 1553(d).  Prior to July 31, 2002, an

alien worker could not file a Form I-185 until the underlying Form I-140 had been approved.

*See* 8 C.F.R. § 245.2(a)(2)(i) (2000) ("Before an application for adjustment of status under

section 245 of the Act may be considered properly filed, a visa must be immediately available.  If a visa would be immediately available upon approval of a visa petition, the application will not be considered properly filed unless such petition has first been approved.").  An employer may withdraw an I-140 petition at any time while it is pending or after it is approved until the beneficiary is granted adjustment of status based on the petition.  8 C.F.R. § 103.2(b)(6).

In 2000, Congress passed the American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313, 114 Stat. 1251 ("AC21").  Section 106(c) of AC21 provides that an I-140 petition "for an individual whose application for adjustment of status pursuant to section 245 has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or similar occupational classification as the job for which the petition was filed."  114 Stat. at 1254; 8 U.S.C. § 1154(j).  This provision, known generally as the "Portability Provision," was designed to provide job flexibility for applicants whose visas had been approved but whose applications for adjustment of status were not adjudicated in a timely fashion.  Immediately after AC21 went into effect, an alien who obtained an employment-based visa petition based on an approved Form I-140 submitted by an employer could file an I-485 application and, if the application was not approved within 180 days, switch to another job within the same field without fear that the application would be denied due to the lack of an approved visa petition for the new employer.

On June 19, 2001, USCIS[1] issued a policy memorandum outlining procedures for

---

[1] Prior to March 1, 2003, the functions of USCIS were carried out by its predecessor agency, the Immigration and Naturalization Service.  *See* 6 U.S.C. § 271(b); 8 U.S.C. § 1103. For simplicity, the Court shall not make any distinction between the agencies and refer to them at all times as USCIS.

processing visa petitions based on the changes imposed by AC21. *See* Compl. ¶ 36 & Ex. B (6/19/2001 Memorandum from Michael A. Pearson, Exec. Assoc. Comm'r, to Service Center Directors and Regional Directors). The policy memorandum explained that adjudicators should not deny applications for adjustment of status on the basis that the alien has changed jobs. *See id.* § F(1). The memorandum stated that when the applicant no longer intends to be employed by the employer who sponsored the visa petition, USCIS should request a letter of employment from the new employer to determine whether the new job is in the same or similar occupation. *Id.*

Effective July 31, 2002, federal regulations were amended to permit a I-485 application to be filed concurrently with an I-140 Petition when a visa is available. *See* 8 C.F.R. § 245.2(a)(2)(i). The purpose of this rule change was to eliminate the delay that occurred between the approval of the I-140 Petition and the filing of the I-485 application. *See Allowing in Certain Circumstances for the Filing of Form I-140 Visa Petition Concurrently with a Form I-485 Application*, 67 Fed. Reg. 49561-01 (July 31, 2002).

On August 4, 2003, USCIS issued a memorandum addressing the requirements of the AC21 Portability Provision in light of the change in regulations allowing concurrent filing of I-140 petitions and I-485 applications. *See* Compl. ¶ 37 & Ex. C (8/4/2003 Memorandum from William R. Yates, Acting Assoc. Dir. for Operations, USCIS, to USCIS Service Center Directors and Regional Directors). The memorandum explained that the guidance from the June 2001 policy memorandum was still in effect, explaining that "[i]f the Form I-140 ('immigration petition') has been approved and the Form I-485 ('adjustment application') has been filed and remained unadjudicated for 180 days or more (as measured from the Form I-485 receipt date), the approved Form I-140 will remain valid even if the alien changes jobs or employers as long as

the new offer of employment is in the same or similar occupation." *Id.* § A. The memorandum

further explained that in cases where the employer withdraws the I-140 petition after it has been

approved and after the I-485 application has been pending for 180 days, the I-140 petition shall

remain valid pursuant to the AC21 Portability Provision. *See id.* § B. In such cases, the alien

must then provide USCIS evidence of a qualifying offer of employment from a new employer, or

else the I-485 application will be denied. *Id.* The memorandum also explained that in cases

where approval of a Form I-140 is revoked or the employer withdraws the Form I-140 *before* the

alien's Form I-485 has been pending for 180 days, the approved Form I-140 is no longer valid

with respect to the alien's application. *Id.*

On May 12, 2005, USCIS issued another guidance memorandum addressing the

processing of I-140 petitions and I-485 applications. *See* Compl. ¶ 39 & Ex. D (5/12/2005

Memorandum from William R. Yates, Assoc. Dir. for Operations, USCIS to Regional Directors

and Service Center Directors). This guidance memorandum presented a series of questions and

answers involving issues that may be faced by adjudicators, including the following:

Question 1.   How should service centers or district offices process <u>unapproved</u> I-140 petitions that were concurrently filed with I-485 applications that have been pending 180 days in relation to the I-140 portability provisions under § 106(c) of AC21?

Answer:   If it is discovered that a beneficiary has ported off of an unapproved I-140 and I-485 that has been pending for 180 days or more, the following procedures should be applied:

    A.   Review the pending I-140 petition to determine if the preponderance of the evidence establishes that the case is approvable or would have been approvable had it been adjudicated within 180 days. If the petition is approvable but for an ability to pay issue or any other issue relating to a time after the filing of the petition, approve the petition on its

merits. Then adjudicate the adjustment of status application to determine if the new position is the same or similar occupational classification for I-140 portability purposes.

B.    If additional evidence is necessary to resolve a material post-filing issue such as ability to pay, an RFE [Request for Evidence] can be sent to try to resolve the issue. When a response is received, and if the petition is approvable, follow the procedures in part A above.

. . .

Question 11.   When is an I-140 no longer valid for porting purposes?

Answer:     An I-140 is no longer valid for porting purposes when:

A.    an I-140 is withdrawn before the alien's I-485 has been pending 180 days, or

B.    an I-140 is denied or revoked at any time except when it is revoked based on a withdrawal that was submitted after an I-485 has been pending for 180 days.

*Id.* at 3-7. Plaintiffs call the review process described in the answer to Question 1 a "Yates Review." *See* Compl. ¶ 39. This memorandum was later revised and reissued on December 27, 2005. *See id.* ¶ 42 & Ex. F.

On October 12, 2005, USCIS adopted a decision from its Administrative Appeals Office in the *Matter of Al Wazzan* as guidance on the administration of the AC21 Portability Provision. *See* Compl. ¶ 41 & Ex. E (Matter of Al Wazzan). In that decision, the Administrative Appeals Office ruled that the Portability Provision did not require USCIS to accept an unadjudicated I-140 petition as "valid" if there was a basis for denying the petition on the merits. *See id.* The decision explained that a petition cannot "remain valid" under the Portability Provision if it was never valid in the first place. *Id.*

On May 30, 2008, USCIS issued a supplemental guidance memorandum relating to the

processing of I-140 petitions and I-485 applications.  *See* Compl. ¶ 43 & Ex. G (5/30/2008

Memorandum from Donald Neufeld, Acting Assoc. Dir., Domestic Operations to Field

Leadership).  This memorandum explained that in accordance with the ruling in the *Matter of Al*

*Wazzan*, an I-140 petition will not be considered "valid" for purposes of the Portability Provision

merely because it was filed with USCIS and the alien's I-485 application has been pending for

180 days.  *See id.* § II(5).  "In order to be considered valid, an I-140 petition must have been filed

on behalf of an alien who was entitled to the employment-based classification at the time that the

petition was filed, and therefore must be approved prior to a favorable determination of a

portability request made under INA § 204(j) [8 U.S.C. § 1154(j)]."  *Id.*

> B.    *Plaintiffs' Applications for Adjustment of Status*

Plaintiffs Ajay Naidu Ravulapalli and Lakshmi Alekhya Ravulapalli are married citizens

of India and residents of Rockville, Maryland.  Compl. ¶¶ 13-14.  On January 16, 2007, Mr.

Ravulapalli's employer, ERP Analysts, Inc. ("ERP") filed a labor certification application on his

behalf, which was approved by the Department of Labor on January 22, 2007.  *Id.* ¶¶ 47-48.

Based on the approved labor certification application, ERP filed an I-140 petition listing Mr.

Ravulapalli as the intended beneficiary on August 16, 2007.  *Id.* ¶ 49.  Mr. Ravulapalli

concurrently filed an I-485 application to adjust his status to lawful permanent resident based on

the I-140 petition.  *Id.* ¶ 50.  Mrs. Ravulapalli also filed an I-485 application as a derivative

beneficiary of her husband's application.  *Id.*

In November 2008, ERP informed Mr. Ravulapalli that it may need to withdraw the I-140

petition it filed on his behalf.  Compl. ¶ 52.  Mr. Ravulapalli then decided to work for

BearingPoint, Inc., which was later acquired by Deloitte Consulting LLP ("Deloitte").  *Id.* ¶¶ 52-

53, 62.  Mr. Ravulapalli presently works for Deloitte in a job that is in the same or similar

occupational classification as the job for which the I-140 petition was filed.  *Id.* ¶ 62.  At the time

Mr. Ravulapalli left the employ of ERP, USCIS had not yet adjudicated ERP's I-140 petition or

the Ravulapallis' I-485 applications.  *Id.* ¶¶ 51, 54.  On March 24, 2009, USCIS denied

Plaintiffs' I-485 applications based on ERP's withdrawal of the I-140 petition.  *Id.* ¶ 54 & Ex. M

(3/24/2009 Notice of Decision).  The decision letter stated that the underlying visa petition upon

which Mr. Ravulapalli's application was based had been withdrawn as of March 24, 2009 and

therefore he was ineligible to adjust status.  *Id.*  Mrs. Ravulapalli's application was denied based

on the denial of her husband's application.  *Id.*  The record indicates that ERP sent a letter to

USCIS requesting withdrawal of the I-140 petition on November 17, 2008.  *See* Compl. Ex. N;

Defs.' Mot. to Dismiss, Ex. 1.

On April 13, 2009, Plaintiffs filed a motion to reopen and/or reconsider USCIS's denial

of their I-485 applications, arguing that their applications should remain valid under the

Portability Provision in AC21.  Compl. ¶ 58.  On June 2, 2009, USCIS denied Plaintiffs' motion

to reconsider on the grounds that the I-140 petition on which their applications were based had

been withdrawn.  *Id.* ¶ 59 & Ex. N.

  C.  *Plaintiffs' Claims in Federal Court*

Plaintiffs filed this action on March 17, 2010.  In their Complaint, Plaintiffs assert five

causes of action relating to Defendants' denial of their I-485 applications to adjust status.  In

Count One, Plaintiffs claim that Defendants had a mandatory duty under the Portability Provision

in AC21, 8 U.S.C. § 1154(j), to treat the I-140 petition submitted by ERP as valid with respect to

Mr. Ravulapalli's new job because his I-485 application remained unadjudicated for 180 days at

the time ERP sought to withdraw the petition.  *See* Compl. ¶¶ 69-72.  In Count Two, Plaintiffs

claim that Defendants acted arbitrarily and capriciously by departing from internal policies

requiring them to consider the merits of the I-140 petition before denying their I-485

applications.  *See id.* ¶¶ 74-78.  In Count Three, Plaintiffs claim that Defendants' refusal to

follow their own policy guidance amounts to a legislative rule change that requires USCIS to

follow notice-and-comment rulemaking procedures under 5 U.S.C. § 553.  *See* Compl. ¶¶ 81-90.

Plaintiffs assert these claims under the judicial review provisions of the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701-06.  Pursuant to the APA, "[a] person suffering legal

wrong because of agency action, or adversely affected or aggrieved by agency action within the

meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  A

reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions

found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law."  *Id.* § 706(2).

     In Count Four of their Complaint, Plaintiffs seek mandamus under 28 U.S.C. § 1361 to

compel Defendants to adjudicate their I-485 applications.  *See* Compl. ¶¶ 92-97.  In Count Five,

Plaintiffs claim that Defendants' distinction between I-485 applicants whose I-140 petitions are

approved and later revoked and I-485 applicants whose I-140 petitions are approvable and later

withdrawn lacks a rational basis and violates the equal protection guarantee implicit in the due

process clause of the Fifth Amendment to the U.S. Constitution.  *See id.* ¶¶ 99-103.  Plaintiffs

seek declaratory relief relating to the alleged violations and an order compelling Defendants to

re-open Plaintiffs' I-485 applications and determine whether they are eligible to adjust status

based on whether the I-140 petition was approvable when filed.  *Id.*, Prayer for Relief.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Complaint in part for lack of subject matter jurisdiction based on a lack of standing and in part for failure to state claim upon which relief can be granted.

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*,

503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

B.      *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. 1949 (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from

the facts alleged") (internal quotation omitted). However, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.*

## III. DISCUSSION

Although Plaintiffs assert five causes of action against Defendants in this action, there are only two core legal questions raised by Plaintiffs' Complaint. First, did USCIS violate the Portability Provision in 8 U.S.C. § 1154(j) by determining that ERP's withdrawal of its I-140 petition after Plaintiffs' I-485 applications had been pending for 180 days made Plaintiffs ineligible to their adjust status? Second, did USCIS violate the Administrative Procedure Act by departing from its own written policy guidelines requiring the agency to determine whether an I-140 petition was approvable when filed, and if so, to approve it? As explained below, the Court finds that the answer to the first question is "no" and the answer to the second question is "maybe."

Before reviewing the merits of Plaintiffs' claims, however, the Court must address several threshold arguments raised by Defendants in their motion to dismiss. First, Defendants argue that Mr. Ravulapalli lacks standing as a beneficiary of the I-140 petition to seek review of USCIS's actions in acknowledging the withdrawal of that petition. *See, e.g.*, *George v. Napolitano*, 693 F. Supp. 2d 125, 130 (D.D.C. 2010) ("In an action seeking review of denial of an I-140 Petition, the prospective employer, and not the alien, is the proper party."). However, Defendants' standing argument misconstrues the nature of the claims Plaintiffs are asserting.

Plaintiffs are not challenging the withdrawal of the I-140 petition or USCIS's acknowledgment of that withdrawal. Instead, they are arguing that the withdrawal of the petition was legally irrelevant because it occurred after their I-485 applications had been pending for 180 days, and therefore Defendants were required—either by law or their own preexisting policies—to determine whether the I-140 petition was approvable, and if so, to approve it. Therefore, Plaintiffs are challenging a legal determination made by Defendants that they were ineligible to adjust their status because of the withdrawal of the I-140 petition. Defendants do not dispute that Plaintiffs have standing to challenge the denial of their I-485 applications. Accordingly, the Court finds that Plaintiffs have standing to assert the claims in their Complaint, all of which challenge the legal basis for Defendants' denial of their I-485 applications.

Second, Defendants argue that ERP's withdrawal of the I-140 petition and USCIS's acknowledgment thereof is not a "final agency action" that is reviewable under the APA. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). However, Defendants' argument again misinterprets Plaintiffs' claims. The challenged agency action in this case is the denial of Plaintiffs' I-485 applications based on the determination that Mr. Ravulapalli was ineligible to adjust status because the I-140 petition submitted on his behalf was withdrawn after his I-485 application had been pending for 180 days. There can be no doubt that the agency took a "final" action with respect to Plaintiffs' I-485 applications—it denied them.

Finally, although the parties did not raise this issue in their briefs, the Court notes that it has jurisdiction to entertain Plaintiffs' claims because Defendants' denial of Plaintiffs' I-485 applications was based on a pure question of law and not the exercise of discretion. *See Mawalla*

*v. Chertoff*, 468 F. Supp. 2d 177, 178 (D.D.C. 2007).  Although 8 U.S.C. § 1252(a)(2)(B)[2]

appears to strip the federal courts of jurisdiction to review denials of applications to adjust status

under 8 U.S.C. § 1255, most federal courts have held that this provision bars only review of

discretionary decisions.  *See, e.g.*, *Pinho v. Gonzales*, 432 F.3d 193, 203-04 (3d Cir. 2005);

*Sepulveda v. Gonzales*, 407 F.3d 59, 62-63 (2d Cir. 2005) ("[W]e hold that 8 U.S.C.

§ 1252(a)(2)(B) does not strip courts of jurisdiction to review nondiscretionary decisions

regarding an alien's eligibility for the relief specified in 8 U.S.C. § 1252(a)(2)(B)(i)."); *Succar v.

Ashcroft*, 394 F.3d 8, 19 (1st Cir. 2005) ("Both the Supreme Court and this court have

consistently rejected arguments that Congress has eliminated judicial review of the legal question

of the interpretation of the statute as to whether an alien is eligible for consideration of relief.");

*Iddir v. INS*, 301 F.3d 492, 497-98 (7th Cir. 2002); *Montero-Martinez v. Ashcroft*, 277 F.3d

1137, 1141-43 (9th Cir. 2002); *Mawalla*, 468 F. Supp. 2d at 180-81.  *But see Djodeir v.

Mayorkas*, 657 F. Supp. 2d 22 (D.D.C. 2009) (Leon, J.) (holding that 8 U.S.C. § 1522(a)(2)(B)(i)

precludes all judicial review of denials of relief under 8 U.S.C. § 1255).  This Court is persuaded

by the weight of the authority that it has jurisdiction to hear Plaintiffs' claims.  Accordingly, it

shall consider whether Plaintiffs have stated a claim upon which relief can be granted.

---

[2] This provision reads as follows:

Notwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

*A.      The AC21 Portability Provision Does Not Require USCIS to Determine Whether an Unadjudicated, Withdrawn I-140 Petition Is Approvable*

Counts One and Four of Plaintiffs' Complaint are both premised on Plaintiffs' belief that the Portability Provision of AC21, 8 U.S.C. § 1154(j), requires USCIS to treat an I-140 petition as "valid" when it is withdrawn *after* an I-485 application has been pending for 180 days but *before* it has been approved. Defendants argue that the Portability Provision does not require this result because, in their view, an I-140 petition is not "valid" until it has been approved. Because this is fundamentally a question of statutory interpretation, the Court's analysis begins with the text of the statute itself.

Section 1154(j) of title 8, which is captioned, "Job flexibility for long delayed applicants for adjustment of status to permanent residence," provides as follows:

> A petition under subsection (a)(1)(D) [since redesignated subsection (a)(1)(F)] of this section for an individual whose application for adjustment of status pursuant to section 1255 of this title has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed.

The critical phrase in this provision is "shall remain valid," which the statute does not define. As the Court explained in the background section, at the time Congress enacted the Portability Provision, it could only have applied to approved I-140 petitions because USCIS did not permit aliens to file I-485 applications until their I-140 petitions had been approved. Therefore, there is no doubt that when Congress enacted the statute, "shall remain valid" referred to the agency's approval of the I-140 petition.

Now that USCIS regulations permit concurrent filing of I-140 petitions and I-485 applications, Plaintiffs argue that "shall remain valid" must also extend to I-140 petitions that

were approvable when filed but were not adjudicated within the first 180 days. In other words, Plaintiffs argue that "valid" means "approvable when filed" rather than "approved." This is one possible construction of the statute, and it would certainly effectuate the purpose of increasing job flexibility for long-delayed applicants for adjustment of status to permanent residence. However, Plaintiffs' construction also goes far beyond what Congress originally intended based on the regulations in place at the time. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts."). Immediately after the Portability Provision was enacted, an alien seeking to change jobs had to wait until his I-140 petition was approved, file an I-485 application, and then wait 180 days, meaning that if the agency took a year to approve the I-140 petition, the alien would have to wait at least a year and 180 days. Now, if the I-140 petition and the I-485 application are filed concurrently, Plaintiffs' construction of the Portability Provision would cut the alien's waiting time down to just 180 days. It is doubtful that Congress would have intended such a significant change to result from the agency's decision to change its regulations to permit concurrent filing.

Defendants argue that because an alien must have an approved I-140 petition before he is eligible to apply for an adjustment of status to permanent residence, the Portability Provision should not be construed to preserve the "validity" of unadjudicated petitions. This is the most natural construction of the statute, and it preserves the meaning Congress originally prescribed. It is also the construction that has been adopted by another judge in this district. *See George v. Napolitano*, 693 F. Supp. 2d at 130-31. "In the usual circumstance, of course, a judge's view of the 'better' reading of a statute administered by an agency is not necessarily dispositive," since an

agency's interpretation of a statute it is entrusted to administer is generally accorded some deference. *Sottera, Inc. v. Food & Drug Admin.*, 627 F.3d 891, 903 (D.C. Cir. 2010) (Garland, J., concurring in judgment). Defendants argue that deference to their reasonable interpretation of the statute is required under *Chevron, U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). *See* Defs.' Mem. at 10. However, *Chevron* deference is only appropriate for statutory interpretations that Congress intended to carry the "force of law," and positions taken in an agency's litigation briefs do not warrant such deference. *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988). The Court respects Defendants' construction of the statute only to the extent it has the "power to persuade." *Mead*, 533 U.S. at 235 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). In any event, the Court agrees that Defendants have the better construction of the statute.

Because the Court finds that the Portability Provision preserves the validity of only those I-140 petitions that have been approved, Defendants' denial of Plaintiffs' I-485 applications based on the lack of an approved I-140 petition did not violate the statute. Accordingly, the Court shall grant Defendants' motion to dismiss Count One of the Complaint. The Court shall also grant Defendants' motion with respect to Plaintiffs' mandamus claim to the extent it relies on Defendants' alleged violation of the statute.

B.      *Plaintiffs Have Stated a Claim that Defendants Acted Arbitrarily or Capriciously By Misapplying Their Established Policies*

Even where an agency has adopted a reasonable construction of the governing statute, the Court "still must ensure that [the agency's] action is not otherwise arbitrary and capricious." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 90 (D.C.

Cir. 2010).  In Count Two of their Complaint, Plaintiffs claim that Defendants acted arbitrarily and capriciously by failing to follow their own interpretive guidelines with respect to the adjudication of I-140 petitions and I-485 applications.  An administrative agency may be said to have acted arbitrarily or capriciously when it disregards its established policy without adequate explanation.  *See INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though an agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion'"); *Commc'ns Satellite Corp. v. FCC*, 836 F.2d 623, 629 (D.C. Cir. 1988) ("If, as [plaintiff] asserts, the [agency] has departed from established policy, then we must determine whether the agency has acted pursuant to 'reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.'") (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.  This is so even where the internal procedures are possibly more rigorous than otherwise would be required.").

Here, Plaintiffs have alleged that USCIS issued binding policy guidelines that required the agency to determine the validity of an unapproved I-140 petition that is withdrawn after an I-485 application has been pending for 180 days.  Specifically, Plaintiffs point to the guidance issued in 2005 requiring a so-called "Yates Review" of unapproved I-140 petitions that have been pending for 180 days.  That guidance memorandum went on to state that an I-140 petition is

"no longer valid for porting purposes when: (A) an I-140 is withdrawn before the alien's I-485 has been pending 180 days, or (B) an I-140 is denied or revoked at any time except when it is revoked based on a withdrawal that was submitted after an I-485 has been pending for 180 days." This language strongly implies that if an I-140 petition is withdrawn *after* the alien's I-485 application has been pending for 180 days, it should be given a "Yates Review" and evaluated to determine if it is approvable. After all, the policy guidance requiring a "Yates Review" effectively eliminates the distinction between petitions that have been "approved" and petitions that are "approvable" once they have been pending for 180 days. It is unclear why Defendants would reimpose that distinction in cases where the petition is withdrawn before it can be granted. Defendants do not address this issue in their briefs, and there is nothing in the record before the Court that explains the agency's rationale. At the motion to dismiss stage, the Court must draw all reasonable inferences in favor of Plaintiffs and assume that USCIS's policy guidance required it to review Mr. Ravulapalli's I-140 petition to determine whether it was approvable, and if so, to approve it. Without the full administrative record and further briefing from Defendants, the Court cannot determine whether Defendants' actions were arbitrary and capricious. However, the Court finds that Plaintiffs have stated a claim for an APA violation, and therefore the Court shall deny Defendants' motion to dismiss with respect to Count Two of the Complaint.

In Count Three of their Complaint, Plaintiffs argue that Defendants' departure from previously established interpretive guidance amounts to a rule change that requires the agency to provide interested parties with notice and an opportunity to comment in accordance with the APA. *See* 5 U.S.C. § 553. Defendants argue that the agency's policies are "interpretive rules" that are not subject to notice-and-comment requirements. *See id.* § 553(b) (exempting from

notice-and-comment procedures "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice"). However, there is some support for Plaintiffs' position that a change in interpretive rules must be accompanied by notice and comment. *See Transp. Workers Union of Am., AFL-CIO v. Transp. Security Admin.*, 492 F.3d 471, 475 (D.C. Cir. 2007) (discussing "a line of cases holding that an agency cannot significantly change its position, cannot flip-flop, even between two interpretive rules, without prior notice and comment"). The parties have not addressed this issue in their briefs, and in light of the uncertainty regarding the nature of the rules relied on by USCIS in denying Plaintiffs' I-485 applications, the Court shall deny Defendants' motion to dismiss Count Three and reconsider this issue in the summary judgment context.

C.      *Plaintiffs Cannot Prevail on Their Equal Protection Claim*

In Count Five of their Complaint, Plaintiffs claim that Defendants' disparate treatment of aliens whose I-140 petitions are approved within 180 days and those whose I-140 petitions are not approved within 180 days violates the equal protection guarantee implied in the Due Process Clause of the Fifth Amendment. "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Whether or not Defendants adhered to their own policies in denying Plaintiffs' I-485 applications, the Court cannot conclude that there is no rational basis for distinguishing between these two categories of applicants. As explained above, the Portability Provision does not require USCIS to determine whether unapproved, withdrawn I-140

petitions are valid, and the agency could have reasonably determined that adjudication of those petitions would waste agency resources and not effectuate the purpose of the statute. Therefore, the Court shall grant Defendants' motion to dismiss Plaintiffs' equal protection claim.

       D.     *Defendants' Alternative Motion to Transfer*

Defendants argue that the Court should transfer this action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Section 1404(a) permits the Court to transfer a case to any other district where it might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." The Court is afforded broad discretion to decide whether transfer from one jurisdiction to another is proper under § 1404(a). *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The decision to transfer is made by an "individualized, case-by-case consideration of convenience and fairness . . . ." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). "The moving party 'bear[s] a heavy burden of establishing that plaintiff['s] choice of forum is inappropriate.'" *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (quoting *Pain v. United Tech. Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980)).

Defendants argue that a change of venue is appropriate because the Northern District of Texas has a more substantial connection to the events at issue in this litigation and is a more convenient forum. It is clear that this action could have been brought in the Northern District of Texas because Defendant David L. Roark, Director of the USCIS Texas Service Center, resides there and personnel at the Texas Service Center denied Plaintiffs' I-485 applications. *See* 28 U.S.C. § 1391(e) ("A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity . . . may, except as otherwise provided

by law, be brought in any judicial district in which (1) a defendant in the action resides[ or] (2) a substantial part of the events or omissions giving rise to the claim occurred . . . .").  Accordingly, the only issue now before the Court is whether the relevant private and public interest factors counsel in favor of transfer.  *See Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127-28 (D.D.C. 2001) (discussing the factors courts should consider in weighing a transfer under § 1404(a)).

The Court begins by considering the private interests at stake in a transfer: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent they may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. *Greater Yellowstone Coalition*, 180 F. Supp. 2d at 127.  Courts generally give considerable deference to the plaintiffs' choice of forum.  *S. Utah Wilderness Alliance*, 315 F. Supp. 2d at 86. Defendant argues, however, that the Court should not give significant weight to Plaintiffs' choice of forum because they do not reside in this District.  It is true that a plaintiff's choice of forum is "conferred less deference by the court when [it] is not the plaintiff's home forum."  *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)).  Therefore, this factor does not weigh as strongly against transfer and is partly balanced by Defendants' preference for the Northern District of Texas.  The Court does note, however, that Plaintiffs reside just outside the District of Columbia.

The parties dispute whether Plaintiffs' claims arose primarily in the District of Columbia

22

or in the Northern District of Texas. According to the allegations in the Complaint and the supporting documentation, it appears that officials at the USCIS Texas Service Center denied Plaintiffs' I-485 applications based on policy guidance issued from USCIS headquarters in the District of Columbia. Because Plaintiffs are challenging the application of those policies, this factor weighs against transfer. The remainder of the private interest factors are of limited value in this case because Plaintiffs' claims are primarily legal in nature and likely to be based solely on the administrative record and resolved on summary judgment. *Otay Mesa Property L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 125 (D.D.C. 2008).

The Court turns next to consideration of the public interest factors, including (1) the transferee forum's familiarity with the governing laws and the pendency of related actions in that forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Trout Unlimited v. U.S. Dep't of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996). Because Plaintiffs' claims involve only federal law and there is no evidence of related actions pending in the Northern District of Texas, the first factor does not weigh in favor of a transfer. According to recent judicial caseload statistics, the calendar in the Northern District of Texas is slightly less congested than the calendar in this district, so this factor weighs slightly in favor of transfer. The parties strongly disagree about whether the Northern District of Texas has a local interest in the controversy. Defendants argue that because the final denials were made by officials in the USCIS Texas Service Center, the Northern District of Texas has a local interest in the case. Defendants rely primarily on cases where the plaintiff is seeking to compel a local field office to adjudicate a pending application after unreasonable delay. *See, e.g.*, *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d

16 (D.D.C. 2008); *Abusedeh v. Chertoff*, Civil Action No. 06-2014, 2007 WL 2111036 (D.D.C. July 23, 2007). However, Plaintiffs' claims focus primarily on the policies issued from USCIS headquarters that apply to all USCIS field offices. Therefore, the Northern District of Texas has no particular localized interest in this litigation. *See Otay Mesa Property*, 584 F. Supp. 2d at 126-27 (finding that there was no localized interest justifying transfer because plaintiffs challenged a national policy that had no direct or unique impact on transferee forum).

Considering the private and public interest factors together, the Court finds that they do not, taken as a whole, weigh in favor of transfer to the Northern District of Texas. Because Defendants have failed to demonstrate that a transfer would be in the interest of justice for the convenience of the parties and witnesses, the Court shall deny Defendants' alternative motion to transfer.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall GRANT-IN-PART Defendants' [8] Motion to Dismiss with respect to Counts One, Four, and Five of the Complaint and DENY-IN-PART the motion with respect to Counts Two and Three of the Complaint. The Court finds that the Portability Provision did not require Defendants to review the I-140 petition filed by ERP once it was withdrawn after Plaintiffs' I-485 applications had been pending for 180 days. The Court also finds that Plaintiffs have failed to assert a viable constitutional claim under the Fifth Amendment's Due Process Clause. However, the Court finds that Plaintiffs have stated a claim for violation of the APA based on Defendants' alleged departure from their own policy guidelines and failure to follow notice-and-comment procedures. The Court also finds that a transfer to the Northern District of Texas is not in the interest of justice, and therefore the Court

shall DENY Defendants' Alternative Motion to Transfer.  An appropriate Order accompanies

this Memorandum Opinion.


Date:   March 29, 2011

                                                    _____/s/_____
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge