**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AJAY NAIDU RAVULAPALLI, *et al.*,

    Plaintiffs,

     v.

JANET NAPOLITANO, *et al.*,

    Defendants.

**Civil Action No. 10-447 (CKK)**

**MEMORANDUM OPINION**
(January 9, 2012)

Plaintiffs Ajay Naidu Ravulapalli and Lakshmi Alekhya Ravulapalli filed suit

challenging the denial of their applications seeking to adjust their immigration status by

Defendants Janet Napolitano, Alejandro Mayorkas, and David L. Roark in their official

capacities as the Secretary of Homeland Security, Director of the United States Citizenship and

Immigration Services ("USCIS"), and Director of the USCIS Texas Service Center, respectively

("Defendants").  Presently before the Court are Defendants' [22] Motion for Judgment on the

Pleadings or Alternatively Motion to Dismiss for Lack of Subject Matter Jurisdiction, Plaintiffs'

[23] Motion for Summary Judgment, Defendants' [29] Cross-Motion for Summary Judgment,

and Defendants' [42] Motion for Leave to File *Nunc Pro Tunc* Cross-Motion for Summary

Judgment.  All four motions have been fully briefed.[1]

---

[1] While the Court's decision today is based on the record as a whole, its consideration
has focused on the following documents, listed according to the respective motions:
- [22] Defs.' Mot. for J. on the Pleadings; [28] Pls.' Opp'n; [33] Defs.' Reply
- [23] Pls.' Mot. for Summ. J.; [30] Defs.' Opp'n; [35] Pls.' Reply
- [29] Defs.' Cross-Mot. for Summ. J.; [37] Pls.' Opp'n; [43] Defs.' Reply
- [42] Defs.' Mot. for Leave to File *Nunc Pro Tunc*; [44] Pls.' Opp'n; [45] Defs.' Reply

Defendants initially sought dismissal of Plaintiffs' claim for lack of subject matter jurisdiction arguing that Defendants' decision to re-open Plaintiffs' application meant there was no final agency action for the Court to review, and Plaintiffs' claims were no longer ripe. *See* Defs.' Mot. for J. on the Pleadings, ECF No. [22], at 1-2. Defendants subsequently granted Plaintiffs' applications for adjustment of status, mooting Defendants' initial dispositive motion. In light of this development, Defendants filed their cross-motion, asserting lack of subject matter jurisdiction on the grounds of mootness and standing, rather than ripeness. Based on the pleadings, the Administrative Record, and the applicable authorities, the Court finds Plaintiffs' claims are moot. Furthermore, even if Plaintiffs' claims are not moot, Plaintiffs lack standing to pursue either theory of the case proffered in their motion papers. Therefore, Defendants' Motion for Leave to File *Nunc Pro Tunc* Cross-Motion for Summary Judgment is GRANTED. Defendants' Cross-Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Defendants' motion is GRANTED as to the issue of mootness and standing, and DENIED in all other respects. Plaintiffs' Motion for Summary Judgment is DENIED AS MOOT. Defendants' Motion for Judgment on the Pleadings or Alternatively Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED AS MOOT.

## I.  BACKGROUND

The Court detailed statutory and regulatory framework governing the case in its prior order, and the Court incorporates that discussion by reference herein. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 44-48 (D.D.C. 2011). The factual and procedural history relevant to the disposition of the motions currently before the Court is briefly set forth below.

A.      *Factual History*

On January 22, 2007, the Department of Labor approved the Application for Permanent

Employment Certification filed by ERP Analysts Inc. ("ERP") on behalf of Mr. Ravulapalli.

Certified Administrative Record ("CAR") Pt. I at 13-26.  Based on this certification, on August

16, 2007, ERP filed a Form I-140 Immigrant Worker Petition with the USCIS on behalf of Mr.

Ravulapalli.  *Id.* at 11.  At the same time, Mr. Ravulapalli filed a Form I-485 Application to

Register Permanent Residence or Adjust Status, seeking to adjust his immigration status from

non-immigrant worker to lawful permanent resident.  CAR Pt. II at 4-15, 49-50.  Mr.

Ravulapalli's adjustment of status was contingent upon the approval of an underlying visa

petition, in this case ERP's I-140 petition.  *See id.* at 64.  Mrs. Ravulapalli also filed a derivative

I-485 spousal application.  CAR Pt. III at 4.

While the I-140 petition and Plaintiffs' I-485 applications were pending, ERP moved to

withdraw the visa petition, stating it had withdrawn its offer of permanent employment to Mr.

Ravulapalli.  CAR Pt. I at 2-3.  The USCIS terminated the I-140 and Plaintiffs' I-485

applications on March 24, 2009.  *Id.*, CAR Pt. II at 64, 79.  Mr. Ravulapalli filed a motion to

reconsider, arguing that ERP should not have been allowed to revoke the I-140 petition since it

had been pending for more than 180 days.  CAR Pt. II at 66-77.  Mr. Ravulapalli argued that

under existing USCIS regulations, he should be able to "port" the I-140 petition to a new

employer, and that the USCIS was required to review the petition for approval—in this context

known as a Yates Review—and then adjudicate Mr. Ravulapalli's I-485 application.  *Id.*  The

USCIS denied the motion to reconsider on June 2, 2009.  *Id.* at 66, 83-94.

On June 16, 2011 pursuant to 8 C.F.R. § 103.5(a)(5), on its own motion, the USCIS re-

opened the Ravulapalli's I-485 applications.  Defs.' Mot. for J. on the Pleadings, Ex. 1, ECF No.

[22-1], at 2-3.  At the same time, the USCIS issued Mr. Ravulapalli a "Notice of Intent to Deny,"

requesting additional evidence that Mr. Ravulapalli had a new offer of employment in the same

or similar occupational classification as his previous offer of employment from ERP.  *Id.* at Ex.

2.  In response, Mr. Ravulapalli submitted a letter from Lanco Global Systems Inc. indicating it

intended to "continue to offer him a full-time permanent position as a Systems Analyst," and

detailing Mr. Ravulapalli's job responsibilities.  Defs.' Mot. to Extend Remaining Briefing

Sched. Deadlines, Ex. A, ECF No. [24-1], at 7-9.  Defendants contend that prior to this date, Mr.

Ravulapalli never provided USCIS with any evidence that he had an offer of employment from

another employer for a position in the same or similar classification as that offered by ERP and

included on the I-140 petition.  Defs.' Cross-Mot. for Summ. J., ECF No. [29], at 4, n.4.  The

USCIS approved Mr. Ravulapalli's I-485 application on July 11, 2011.  Defs.' Ex. 2 at 2.[2]  The

USCIS then issued two Requests for Evidence to Mrs. Ravulapalli, requesting an updated

medical examination and evidence Mrs. Ravulapalli had received all required vaccinations.

Defs.' Ex. 3 at 3-5.  The USCIS approved Mrs. Ravulapalli's I-485 application on August 9,

2011.  Plaintiffs subsequently received their "green cards" and are now both lawful permanent

residents of the United States.

    B.    *Procedural History*

    Plaintiffs filed suit on March 17, 2010 asserting five different claims for relief.  The

Court granted in part and denied in part Defendants' Motion to Dismiss, leaving only two claims

---

[2] Unless otherwise indicated, "Defendants' Exhibits" were attached to Defendants'
Cross-Motion for Summary Judgment.

in this matter: Count Two, alleging Defendants acted arbitrarily and capriciously by departing

from internal policies requiring them to consider the merits of the I-140 petition before denying

their I-485 applications; and Count Three, alleging Defendants' refusal to follow their own

policy guidance regarding the treatment of I-140 petitions amounted to a legislative rule change

that requires USCIS to follow notice-and-comment rulemaking procedures under 5 U.S.C. § 553.

*See* 3/29/11 Order, ECF No. [13].

The Court ordered the parties to file their dispositive motions by no later than June 24,

2011. 4/28/11 Order, ECF No. [20]. Defendants filed their Motion for Judgment on the

Pleadings on June 22, 2011, and Plaintiffs filed their Motion for Summary Judgment on June 23,

2011. Nearly two and one half months later, Defendants filed their Cross-Motion for Summary

Judgment on September 9, 2011. Defendants later moved for leave to file the cross-motion *nunc*

*pro tunc*, which Plaintiffs oppose.

The Court excuses Defendants' tardiness in filing their cross-motion for three reasons.

First, the Plaintiffs moved for and received additional time to respond to Defendants' cross-

motion, and otherwise failed to identify any prejudice they might have suffered. Second,

Defendants' cross-motion raises the issue of the lack subject matter jurisdiction, which the Court

would be obligated to raise itself even absent Defendants' motion. *See 21st Century Telesis*

*Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003) (explaining that a court must evaluate

mootness "through all stages" of the litigation to ensure that a live controversy remains) (quoting

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). Third, although Defendants' cross-

motion contains a new substantive argument that Plaintiffs did not previously have notice

of—Defendants' argument that Plaintiffs' Complaint amounts to an impermissible programmatic

5

challenge to an ongoing policy—the Court does not reach that argument given the issue of

subject matter jurisdiction is dispositive.  Therefore the Court shall grant Defendants' motion for

leave, and will turn to the merits of Defendants' cross-motion for summary judgment.

## II.  LEGAL STANDARD

"Article III of the Constitution restricts the federal courts to deciding only 'actual,

ongoing controversies,' and a federal court has no 'power to render advisory opinions [or] ...

decide questions that cannot affect the rights of litigants in the case before them.'" *Nat'l Black*

*Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (internal citations

omitted) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988) and *Preiser v. Newkirk*, 422 U.S. 395,

401 (1975)).  The case or controversy requirement "means that, throughout the litigation, the

plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant

and likely to be redressed by a favorable judicial decision."  *Spencer v. Kemna*, 523 U.S. 1, 7

(1998) (internal quotation marks omitted).  In other words, "a live controversy must exist at all

stages of review."  *Nat'l Black Police Ass'n*, 108 F.3d at 349.  "Hence, '[e]ven where litigation

poses a live controversy when filed, ... [this] court [must] refrain from deciding it if 'events have

so transpired that the decision will neither presently affect the parties' rights nor have a

more-than-speculative chance of affecting them in the future.'"  *Id.* (quoting *Clarke v. United*

*States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).

"[J]urisdiction, properly acquired, may abate if the case becomes moot because" (1) "there

is no reasonable expectation that the alleged violation will recur," and (2) interim events "have

completely and irrevocably eradicated the effects of the alleged violation."  *Los Angeles County v.*

*Davis*, 440 U.S. 625, 631 (1979) (internal citations and quotations omitted).  "When both conditions

6

are satisfied it may be said that the case is moot because neither party has a legally cognizable

interest in the final determination of the underlying questions of fact and law." *Id.*

## III.  DISCUSSION

    A.    *Plaintiffs' Claims Regarding the Denial of their I-485 Applications are Moot*

The parties do not dispute that the USCIS re-opened and subsequently approved the I-

485 applications submitted by Mr. and Mrs. Ravulapalli.  The only dispute is whether that action

was *lawful*.  Federal regulations provide that the USCIS can, on its own motion, reconsider its

previous decisions.  *See* 8 C.F.R. § 103.5(a)(5).  Defendants also provided the declaration of

Jonathan R. Micale, the Assistant Center Director for Examinations at the USCIS Texas Service

Center, declaring Plaintiffs' I-485 applications were approved "under 8 U.S.C. § 1255(a) in

accordance with USCIS policies and procedures."  Courts afford agency actions a presumption

of regularity "in the absence of clear evidence to the contrary."  *Sussman v. U.S. Marshals* Serv.,

494 F.3d 1106, 1117 (D.C. Cir. 2007) (quoting United *States v. Chem. Found., Inc.*, 272 U.S. 1,

14-15 (1926)).  Thus, Plaintiffs must provide "clear evidence" their applications were unlawfully

approved so as to avoid a finding of mootness.  Plaintiffs attempt to overcome this presumption

with (1) Defendants' refusal to produce information regarding ERP's I-140; and (2) Defendants'

reliance on documents dated after the CAR was certified.  Neither point defeats the presumption

of regularity, and the Court finds for purposes of this litigation, Defendants sufficiently

demonstrated Plaintiffs' I-485 applications were lawfully re-opened and granted.

    1.    <u>Information Regarding the Processing of ERP's I-140 Petition</u>

Plaintiffs' primary point of contention with Defendants' grant of their adjustment of

status applications is that Defendants have thus far refused to provide Plaintiffs with information

regarding whether or how the I-140 petition originally filed on behalf of Mr. Ravulapalli was

adjudicated.  Defendants contend that they cannot provide this information to Plaintiffs because

they are not parties to the I-140 petition.  In response, Plaintiffs point to the fact they were

previously informed when ERP's original I-140 petition was withdrawn.  In any event, Plaintiffs

never demonstrated that Defendants are *required* to disclose the status of the I-140 petition to the

intended beneficiary, i.e., Mr. Ravulapalli.  Plaintiffs' speculation as to how the Defendants

adjudicated the I-140 petition and why Defendants will not disclose that information to Plaintiffs

is not evidence, much less clear evidence sufficient to overcome the presumption of regularity.

The case of *Krishnamurthy v. Mukasey*, does not persuade the Court that the Defendants'

conduct in this case is irregular.  Plaintiffs' counsel provided the declaration of Anna Stepanova,

counsel for Karthik Krishnamurthy in his suit against the Attorney General.  The USCIS granted

Mr. Krishnamurthy's I-485 application on November 27, 2006, but moved to rescind his green

card on April 3, 2007.  Stepanova Decl. ¶¶ 3a-d.  The USCIS claimed that the agency had

improperly approved the I-485 after Mr. Krishnamurthy "ported" his I-140 petition to a new

employer before the original I-140 was approved.  *Id.* at ¶¶ 3a, c.  Mr. Krishnamurthy did not

discover the original adjudication of the underlying I-140 until counsel filed a FOIA request in

connection with Mr. Krishanmurthy's federal law suit.  *Id.* at ¶ 5.  The underlying rescission

proceedings were ultimately dismissed with prejudice.  *See Krishnamurthy v. Mukasey*, Case No.

08-1578, ECF No. [34] (Stipulation of Dismissal).  Plaintiffs contend "[t]he difference between

these closely analogous cases is that Mr. Krishnamurthy was provided evidence of how his

sponsoring employer's I-140 was processed."  Pls.' Opp'n at 7.  This is simply incorrect.  As in

this case, Mr. Krishnamurthy never received any information regarding the processing of the

underlying I-140 petition before or at the time his I-485 application was approved.  Mr.

Krishnamurthy only learned this information after filing a FOIA request after rescission

proceedings were instituted.  At this point in time, the USCIS's behavior in both Mr.

Krishnamurthy's and Plaintiffs' case is identical: the parties were informed their I-485

applications had been granted, but were not informed how the underlying I-140 petition was

processed or adjudicated.  If anything, *Krishnamurthy* supports the conclusion that the USCIS's

conduct in approving Plaintiffs' adjustment of status applications is entirely consistent with its

regular proceedings.  With no identifiable obligation to inform the Plaintiffs of how the I-140

petition was processed, and no evidence that disclosing that information along with approval of a

party's I-485 is the USCIS's regular practice, the fact that the USCIS has not provided such

information to Mr. and Mrs. Ravulapalli does not call into question the presumption of regularity

the Court applies to the re-opening and approval of Plaintiffs' adjustment of status applications.

2.     Reliance on Documents Outside the CAR

Plaintiffs' only other argument regarding the legality of the USCIS's approval of their

adjustment of status petitions is that the USCIS improperly relied on documents dated after the

certification of the Administrative Record in its cross-motion.  Pls.' Reply at 6.  Admittedly, the

documents filed in support of Defendants' cross-motion post date the certification of the CAR.

*Cf.* CAR Pts. I-III (certified on 5/3/11 and 5/4/11) *with* Defs.' Ex. 2 (dated 7/12/11).  It is

important to note, however, the Plaintiffs never contest the validity of the additional documents

relied upon by Defendants for their mootness argument, namely the Notice of Intent to Rescind

sent to Mr. Ravulapalli, the requests for additional information sent to Mrs. Ravulapalli, the

Welcome Notices sent to both Plaintiffs indicating approval of their I-485 applications.  The fact

that Defendants did not have these documents certified for purposes of this litigation does not call into question the regularity of the underlying administrative proceedings.  The lack of certification, without more, certainly does not rise to the level of "clear evidence" necessary to overcome the presumption of regularity.

With the presumption of regularity intact, Defendants have satisfied the two-part inquiry under *County of Los Angeles* establishing Plaintiffs' claims are moot.  Plaintiffs cannot reasonably expect that the alleged violation—denial of their I-485 applications after failing to properly process the I-140 petition—will recur.  Defendants granted Plaintiffs' I-485 applications and issued the Plaintiffs green cards.  Plaintiffs' fear of rescission (discussed below) notwithstanding, the violation alleged in the complaint cannot recur.  Additionally, by granting Plaintiffs' applications and issuing them green cards, the effects of the initial violation have been eliminated.  Defendants effectively mooted Plaintiffs' claims for relief, and the Court now lacks subject matter jurisdiction.

B.      *Any Challenge to the Re-Opening and Approval of Plaintiffs' I-485 Applications is Outside the Scope of this Litigation*

In an attempt to avoid the inevitable conclusion that their claims are moot, Plaintiffs argue that the Court still has jurisdiction over Defendants' alleged "unlawful" re-opening and granting of Plaintiffs' I-485 applications.  As Defendants note, these allegations are outside the scope of the Complaint, and therefore beyond the purview of this litigation.  Count Two of the Complaint alleges Defendants violated the APA by failing to allow Mr. Ravulapalli to port ERP's I-140 petition, failing to perform a Yates review, and automatically denying Plaintiffs' I-485 applications.  Compl. ¶¶ 74-78.  Count Three likewise alleges a violation of the APA by failing to apply the portability provision, "refus[ing] to notify I-485 applicants of an attempted

withdraw of the underlying I-140 petition . . . refus[ing] to conduct a Yates review . . . and automatically den[ying] an I-485 application based on the I-140 petition." *Id.* at ¶ 82. At no point did Plaintiffs allege injury based on (1) the re-opening of their I-485 applications; (2) the granting of their I-485 applications; (3) the risk of rescinding their lawful permanent resident status; or (4) the risk of not being able to naturalize because of a lack of proof they were "lawfully" admitted. Nor have Plaintiffs sought leave to file an amended complaint including these new allegations. Yet Plaintiffs' assertion of the Court's jurisdiction is entirely based on these new allegations. *See* Pls.' Opp'n to Defs.' Mtn. for J. on the Pleadings, ECF No. [28], at 11 ("Specifically the Court must determine whether the Defendants violated 8 U.S.C. §§ 1255(a)(3) and 1154(b) and (j) by reopening the Plaintiffs' I-485 applications and approving Plaintiff-husband's I-485 without an approved I-140."). Plaintiffs cannot now amend the Complaint to avoid dismissal by including the new allegations in their dispositive motion papers. *See Schneiderman v. United States*, 320 U.S. 118, 160 (1943); *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

Plaintiffs' reliance on *National Mining Association v. Jackson*, 768 F. Supp. 2d 34 (D.D.C. 2011) is misplaced. In *National Mining*, Judge Reggie B. Walton found the plaintiff's challenge to an EPA permitting process was ripe even though the agency had yet to issue or deny any permits under the process. *Id.* at 46. Judge Walton noted that the plaintiff was challenging the legality of the process itself, not the issuance or denial of any permits. *Id.* Thus plaintiff's claim was ripe for judicial review. Assuming arguendo the Plaintiffs in this case were actually challenging the process and not the end result (the denial of their I-485 applications), Plaintiff's revised claims still fall outside the scope of this litigation. At best, the Complaint challenges the

process of failing to port I-140 petitions and automatically denying I-485 applications. Plaintiffs' new challenge—to the process of re-opening I-485 applications and granting the applications without disclosing how the I-140 petition was processed—is not challenged in the Complaint, and cannot be the basis for the Court's jurisdiction.  By granting Plaintiffs' I-485 applications, Defendants mooted all claims remaining in the Complaint, and there is no longer any live controversy properly presented to the Court for adjudication.

     C.     *Plaintiffs Lack Standing to Challenge the Denial and Approval of Their I-485 Applications*

Even if the Court were to (1) find Plaintiffs' claims were not moot; and (2) construe the Complaint to encompass Plaintiffs' challenge to the grant of their I-485 applications, the Court would still be compelled to dismiss this case for lack of subject matter jurisdiction.  Specifically, Plaintiffs lack standing to challenge both the original denial and ultimate granting of their adjustment of status applications.  To have standing, Plaintiffs must first show that they have suffered an "injury in fact," that is, the violation of a legally protected interest that is "(a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotations omitted). Second, "there must be a causal connection between the injury and the conduct complained of." *Id.*  Third, it must be "likely" that the injury would be "redressed by a favorable decision."  *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  The inquiry in this case fails on the first step.

     1.     <u>Standing to Challenge the Denial of Plaintiffs' Applications</u>

In the event Plaintiffs' claims were not mooted when they received their green cards, the Plaintiffs now lack standing to challenge Defendants' failure to perform a Yates Review and

automatic denial of their I-485 applications.  There is no "actual injury" attributable to this

conduct because Plaintiffs received their green cards.  At best Plaintiffs argue that assuming

Defendants failed to perform the Yates Review after reopening their applications, Plaintiffs are

at risk for having their green cards rescinded any time in the next five years.  This "injury" is by

definition hypothetical: *If* Defendants did not properly process the underlying I-140

petition—complete conjecture given Plaintiffs' complete lack of evidence on this point—then at

some point in the future Defendants *might* try to rescind Plaintiffs' green cards.  This injury

certainly cannot be considered "actual" or "imminent."  Plaintiffs' argument is particularly

unpersuasive because in the single case identified by Plaintiffs in which Defendants attempted to

rescind a green card for improper approval of the I-140 petition, *Krishnamurthy v. Mukasey*,

*supra*, the rescission proceedings were dismissed *with prejudice*.  *See Krishnamurthy v.*

*Mukasey*, Case No. 08-1578, ECF No. [34] (Stipulation of Dismissal).  With no injury in fact,

Plaintiffs lack standing to challenge the previous denial of their I-485 petitions.

2.   <u>Standing to Challenge the Grant of Plaintiffs' Applications</u>

Even if the Court were to read Plaintiffs' Complaint *very* liberally so as to include

allegations challenging the reopening and grant of Plaintiffs' applications to adjust their

immigration status, the Plaintiffs' claims still fail on the issue of standing.  Once again, Plaintiffs

cannot show any "actual injury" sufficient to establish standing to challenge this action.

Plaintiffs argue that Defendants' grant of their I-485 applications caused two injuries (1)

Defendants can rescind their green cards "with the swipe of a pen" during the next five years;

and (2) Plaintiffs will be unable to prove they were "lawfully admitted" if they seek to

naturalize.  As explained above, the risk of rescission is too speculative to be considered an

actual injury for standing purposes.  Plaintiffs' second argument is as speculative as the first.

This "injury" is contingent on Plaintiffs choosing to naturalize at some point (at least five years,

*see* 8 C.F.R. § 316.2(a)(3)) in the future; and at that time, Defendants refusing to recognize the

legality of applications the USCIS swore under oath were approved in accordance with USCIS

policies and procedures.  Micale Decl. ¶ 9.  This scenario is too remote, both in time and

likelihood, to amount to an "injury in fact" for purposes of this case.  With no standing to

challenge either the denial or grant of their adjustment of status applications, Plaintiffs' case

must be dismissed.

## IV.  CONCLUSION

For the reasons stated above, the Court finds its lacks subject matter jurisdiction over the

remaining claims at issue in this case.  By granting Plaintiffs' applications to adjust their

immigration status, Defendants effectively mooted Plaintiffs' claims.  Plaintiffs' new allegations,

challenging Defendants' re-opening and ultimate approval of their applications, are outside the

scope of the Complaint.  Even if the Court were to find Plaintiffs' claims were not moot and/or

that the new allegations are properly before the Court, Plaintiffs failed to identify any "actual

injury" sufficient to establish standing to challenge Defendants' original denial or subsequent

grant of Plaintiffs' applications to adjust their immigration status.  Therefore, Defendants'

Motion for Leave to File *Nunc Pro Tunc* Cross-Motion for Summary Judgment is GRANTED.

Defendants' Cross-Motion for Summary Judgment is GRANTED IN PART and DENIED IN

PART.  Defendants' motion is as to the issues of mootness and standing is GRANTED, and

DENIED in all other respects.  Plaintiffs' Motion for Summary Judgment is DENIED AS

MOOT.  Defendants' Motion for Judgment on the Pleadings or Alternatively Motion to Dismiss

for Lack of Subject Matter Jurisdiction is DENIED AS MOOT.

An appropriate Order accompanies this Memorandum Opinion.

Date:   January 9, 2012

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge